**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| **Randolph Long and Gloria Long,** | ) | |
| | ) | **CIVIL ACTION NO. 3:04-CV-203** |
| **Plaintiffs,** | ) | **(Phillips/Shirley)** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Monaco Coach Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**


The matter before the Court involves an allegedly defective motorhome. The plaintiffs' claims are based upon causes of action created by the Magnuson-Moss Warranty Act ("MMWA") and the Tennessee Consumer Protection Act ("TCPA"). The defendant has filed a motion for partial summary judgment [Doc. 72] and a motion to dismiss [Doc. 91], while the plaintiffs have filed a motion to dismiss defendant's counterclaim [Doc. 96]. Parties have been given sufficient time to file responses and replies. For the reasons that follow, defendant's motion for partial summary judgment is **GRANTED in part** and **DENIED in part**. Defendant's motion to dismiss is **GRANTED**, and plaintiffs' motion to dismiss the defendant's counterclaim is **DENIED**.

1

## I.     Summary of the Facts

As the law requires, all disputed facts and inferences are resolved most favorably for the movant.  Furthermore, the Court merely provides an abridged summary of facts for the purposes of this opinion.

On or about April 15, 2002, plaintiffs Randolph and Gloria Long ("the Longs") purchased the subject motorhome, a 2002 Monaco Windsor, from Buddy Gregg Motor Homes, Inc. in Knoxville, Tennessee.  The cost of the motorhome, including registration charges, document fees, and sales tax, and excluding other collateral charges, such as bank and finance charges, totaled more than $233,600.00.

The motorhome was accompanied by a limited warranty from Monaco Coach Corporation ("Monaco").  According to the limited warranty, Monaco agreed to cover the motorhome for the first twelve months after the original retail purchase date or the first 24,000 miles of use, whichever occurred first.  The warranty also states that any implied warranty, including any implied warranty of fitness for a particular purpose and any implied warranty of merchantability, are limited in duration to the term of the limited warranty and are limited in scope of coverage to those portions of the motorhome covered by the limited warranty.  Further, the limited warranty recites:  "Warrantor's Limited Warranty covers defects in the manufacture of your motorhome and defects in material used to manufacture

2

your motorhome.  Also see the section  'What the Warranty Does Not Cover' set out below[1]

.... Warrantor will repair and/or replace, at its option, any covered defect ...."  Additionally,

the limited warranty disclaims any and all incidental and consequential damages resulting

from any defect in the motorhome.  The warranty states that the exclusion of consequential

and incidental damages shall be deemed independent of, and shall survive, any failure of

the essential purpose of any limited remedy.  However, Monaco states in its warranty that

in some states the exclusion is not permitted by law and therefore may not be applicable

to a motorhome warranty.


The Longs began experiencing problems with the motorhome almost immediately

after the purchase date.  They allege that a variety of defects put the motorhome out of

service, by reason of repair, for a total of 5 months (excluding 60 days awaiting repairs) in

the first year of use and that the motorhome required nine separate service dates for

repairs.  In the complaint, the plaintiffs assert defects, conditions, and/or non-conformities

in the motorhome, including but not limited to:  defective engine, defective electrical

system, defective windshield, defective water pump, defective interior trim, defective

---

[1]As to the warranty section that states what the warranty does not cover, the warranty disclaims coverage on "any items which are added or changed after the motorhome leaves Warrantor's possession; items that are working as designed but which you are unhappy with because of the design; normal wear and usage, such as fading of discoloration of fabrics, or the effects of condensation inside the motorhome; defacing, scratching, dents and chips on any surface or fabric of the motorhome, not caused by Warrantor; routine maintenance, including by way of example wheel alignments; the automotive chassis and power train, including by way of example the engine, drive train, steering and handling, braking, wheel balance, muffler, tires, tubes, batteries and gauges; appliances and components covered by their own manufacturer's warranty including, by way of example the microwave, refrigerator, ice maker, stove, oven, generator, roof air conditioners, hydraulic jacks, VCR, television(s), water heater, furnace, stereo, radio, compact disc player, washer, dryer, inverter and cellular phone; or flaking, peeling and chips or other defects or damage in or to the exterior or finish caused by rocks or other road hazards, the environment including air borne pollutants, salt, tree sap and hail."

exterior trim, defective satellite, defective instrument panel, defective ceiling, defective air coupler, defective steering/suspension, defective bedroom slide out, defective air conditioning, defective kitchen slide, defective brake system, defective frame, defective kitchen faucet system, defective tail lights, defective fresh water tank, defective entry door, defective entertainment system, defective engine access panel, defective fuel leak, defective carpet, defective rear driver slide, defective block heater, defective leveling system, defective toilet, persistent recall, persistent vibration, persistent no crank condition, and any other complaints actually made, whether contained in the Warrantor's invoices or not.

Eventually, the limited warranty expired. Plaintiffs assert Monaco did not successfully repair the defects during the limited warranty period; that the motorhome continues to develop defects; and that they have essentially bought a "lemon."

On February 6, 2004, the Longs instituted this lawsuit against Monaco in the Northern District of Georgia, Atlanta division. Thereafter, the case was transferred to this federal court. The plaintiffs' second amended complaint filed with this Court alleges eight counts against the defendant: (1) written breach of warranty pursuant to 15 U.S.C. §2310; (2) breach of implied warranty of merchantability pursuant to 15 U.S.C. §2310(d); (3) breach of implied warranty of fitness for a particular purpose pursuant to 15 U.S.C. §2310(d); (4) breach of implied warranty of habitability and workmanship pursuant to 15 U.S.C. §2310(d); (5) violation of 16 C.F.R. §700.5 pursuant to 15 U.S.C. §2310(d); (6) violation of 16 C.F.R. §701.3 pursuant to 15 U.S.C. §2310(d); (7) violation of T.C.A. 47-18-

4

104 and T.C.A. § 47-18-109 regarding unfair deceptive acts or practices; and (8) T.C.A. 47-18-104 and T.C.A. § 47-18-109 (b) regarding injunctive relief.

In defendant's dispositive motions, it asserts several bases for dismissal of plaintiffs' claims for damages.  The bases are as follows:  (1) the remedy of revocation of acceptance under the MMWA is not available absent privity and/or with regard to limited warranties; (2) the diminution in value with regard to economic loss is not recoverable absent privity of the parties, and incidental and consequential damages can be and were successfully disclaimed in the limited warranty; (3) plaintiffs' claim for damages due to breach of implied warranty of merchantability, fitness for a particular purpose, and habitability are not available; (4) plaintiffs' claims for damages due to alleged defects arising after April 15, 2003 are not recoverable because they are outside the limited warranty period; (5) plaintiffs' claims for damages due to defects that were successfully repaired and accepted by the plaintiffs should be dismissed; and (6) plaintiffs have not proven the requisite malice or reckless conduct to sustain a claim for punitive damages.  In the subsequent motion to dismiss, the defendant asserts that T.C.A. §47-18-1402, which allows extensions of limited warranties due to repairs, is not applicable to the instant matter because the statute specifically excludes "new or used motor vehicles."

In response, the plaintiffs argue that the MMWA creates a cause of action for consumers damaged by a warrantor's breach, abolishes any privity requirement for written (express) warranty, and wholly relies on state law in regards to the issue of implied warranties and privity, which in Tennessee is abrogated by statute.  The plaintiffs assert

5

that because the federal MMWA provides for limitless equitable remedies, revocation is available despite the absence of privity. Additionally and alternatively, the plaintiffs assert that diminished value is the standard measure of damages for breach of warranty. Plaintiffs argue that damage of diminished value is not considered an incidental and/or consequential damage. The plaintiffs further state that the defendant is obligated to make the motorhome defect free within a reasonable opportunity and that its failure to do so constitutes a failure of the essential purpose of the warranty/remedy, rendering invalid its disclaimer of incidental and consequential damages. Also, the plaintiffs argue that the defendant does not specifically identify any defects that have been purportedly cured and that even if such defects are somehow identified, the unreasonable repair history and plaintiffs' testimony are still evidence of breach of warranty. Additionally, plaintiffs assert that punitive damages may be awarded in that the defendant's business practices/decisions and advertisements[2] may be considered punitive behavior. Lastly, the plaintiffs state that the warranty should be extended under T.C.A. §47-18-1402 in that other sections of the Tennessee Code exclude a motorhome from the definition of "motor vehicle."

As to the dispositive motion filed by the plaintiffs, the plaintiffs argue that the defendant's counterclaim should be dismissed. Defendant filed a counterclaim pursuant to T.C.A. § 47-18-109(e) essentially asserting that plaintiffs' claims regarding alleged deceptive, unfair actions and/or practices in violation of TCPA, as well as plaintiffs' claims regarding injunctive relief against Monaco, are without legal merit and are brought for the

---

[2]Plaintiffs claim that Monaco's advertisements do not sufficiently state their disclaimers of coverage.

6

purposes of harassment.  Thus, Monaco asserts that it should be indemnified for all damages, including reasonable attorney fees and costs pursuant to T.C.A. § 47-18-109(e)(2).  In plaintiffs' motion to dismiss, the Longs argue that if such assertions are pled, the averments should be in the form of a motion for sanctions, rather than a counterclaim. Additionally, although defendant's counterclaim concerns the plaintiffs' claim for alleged deceptive, unfair acts/practices and injunctive relief, the plaintiffs re-argue their assertions related to an extension of the limited warranty due to repairs pursuant to T.C.A. §47-18-1402 as stated in their response to defendant's dispositive motion.  However, in plaintiffs' reply, plaintiffs state that Monaco's business practices and actions are deceptive and unfair, warranting claims under the TCPA.  The plaintiffs assert that Monaco invoked undisclosed warranty disclaimers and a fraudulent warranty registration card that falsely alleged consent to those disclaimers.  Plaintiffs also assert that the use of deceptive advertisements regarding the scope of Monaco's warranty coverage, as well as the deposition testimony of Monaco's representatives allegedly admitting deceptive practices in companion cases, warrant claims under the TCPA regarding deceptive practices by Monaco and injunctive relief.

## II.    Motion for Summary Judgment Standard

Rule 56 of the  Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  The burden is on the moving party to conclusively show that no genuine issue of material fact exists.  A court must view the

7

facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir.1996).

### III. Motion for Summary Judgment and Applicable Law

    A. Revocation of Acceptance is not available under the Magnuson-Moss Warranty Act

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. §2310(d)(1). To bring a breach of warranty claim under the MMWA, a plaintiff must show: (1) that the goods are subject to a warranty

8

and are nonconforming; (2) that the seller was given a reasonable opportunity to cure the

defects; and (3) that the seller failed to repair the defects within a reasonable time or within

a reasonable number of attempts. *Abele v. Bayliner Marine Corp.,* 11 F.Supp.2d 955, 961

(N.D.Ohio 1997).

Section 2304 of the MMWA allows for the refund for or replacement without charge

of a product when the product contains a defect or malfunction after a reasonable number

of attempts to remedy the defect. 15 U.S.C. §2304(a)(4). However, §2304 only applies to

"full" warranties. *See* 15 U.S.C. §2303(a)(1) and (2); *MacKenizie v. Chrysler Corp.*, 607

F.2d 1162, 1166 and n.7 (5th Cir. 1979); *Gilbert v. Monaco Coach Corp.*, 352 F.Supp.2d

1323, 1330 (N.D.Ga. 2004). As to limited warranties, the MMWA is virtually silent as to the

amount and type of damages which may be awarded for breach of an express limited

warranty. There does not appear to be any Sixth Circuit precedent discussing revocation

of acceptance when a limited warranty is in place; however, other circuits have decided that

where a limited warranty is in effect, state law should fill in the void and determine the

"applicable measure" of damages. *See Mackenzie*, 607 F.2d at 1166 & n.7;[3] *Gilbert* , 352

---

[3]In *Mackenzie*, the plaintiff purchased a 1976 Dodge Aspen for use in his newspaper delivery job. *Id.* at 1164. The car suffered many mechanical problems, and the plaintiff was forced to return the car to the dealer several times for repair. *Id.* Because of delays associated with the repair of the car, the plaintiff was late in delivering his newspapers and attached notes to the papers claiming that the late delivery was caused by the failure of the dealer to fulfill the warranty on the car. *Id.* Chrysler complained to the newspaper about the plaintiff's conduct, and the newspaper subsequently fired the plaintiff. *Id.* The plaintiff sued Chrysler for breach of warranty, as well as tortious interference with an employment contract. *Id.* at 1163. The plaintiff claimed that the district court was in error for refusing to give a MMWA jury instruction. *Id.* at 1165.

The *MacKenize* Court found no error in the district court's refusal to give the MMWA instruction. *Id.* at 1166. The Court stated that the plaintiff would recover no more under the MMWA than he would under his state law claims, making the error harmless. *Id.* The Court held that the applicable measure of damages under the MMWA is found by referring to state law. *Id.* Because the instruction under state law

9

F.Supp.2d at 1334-35; *Smith v. Monaco Coach Corp.,* 334 F.Supp.2d 1065, 1070 (N.D. Ill. 2004);[4] *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004).[5]

Turning to Tennessee state law, revocation of acceptance is not an available remedy in the absence of privity.[6] *Simpson v. Beaverwood*, No. CA141 1990 WL 61866, at *3 (Tenn.Ct.App. May 15, 1990). The *Simpson* Court initially noted that the matter appeared to be a case of first impression in that no other court in Tennessee had addressed the issue of requiring privity between parties when a demand for revocation of acceptance was requested. *Id.* The Court then stated that "[i]t is generally held that revocation of acceptance is applicable only where there is privity of contract, and that the buyer may assert it only against the seller, not the seller's agent or the manufacturer who was not the seller. As against the manufacturer who was not the seller, he is entitled only to money damages." *Id.* (citations omitted). The Court found that the appropriate measure of

---

had covered the damages that the plaintiff could have recovered under the MMWA, an additional instruction would have been redundant. *Id.* In summation, the *MacKenize* Court stated that while the MMWA was virtually silent as to the amount of damages a plaintiff may be awarded, state law should fill in the void and determine the "applicable measure" of damages. *Id.* Moreover, the Court held that the legislative history clearly implies that a resort to state law is proper in determining the applicable measure of damages under the Act. *Id.*

[4]In *Smith*, the Court held that while revocation of acceptance is one of the remedies contemplated by the MMWA, §2310(d) does not actually authorize specific types of relief, but instead only creates a jurisdictional basis for traditional state law.

[5]In *Schimmer*, the Court was saddled with an issue regarding calculation of damages to determine if the amount in controversy had been meet. In the Court's analysis, the relief sought, revocation of acceptance, was not available. Rather, the Court determined that the diminution in value was the appropriate measure of damages. Ultimately, the Court dismissed the action for failure to prove damages that would meet the amount in controversy.

[6]Plaintiffs do not argue that the warranty is not limited or that another state's laws, other than Tennessee state law, would apply. Further, the plaintiffs do not argue that privity existed. Therefore, this Court may rely upon the undisputed fact that there was no privity between the defendant and the plaintiffs.

damages for the breach of warranty claim, pursuant to T.C.A. §47-2-714(2), was the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

In the instant matter, the Windsor moterhome was purchased from Buddy Gregg Motor Homes, Inc. There was no contract formed (privity) between plaintiffs and Monaco. Although plaintiffs state that "equitable relief" under 15 U.S.C. §2310(d)(1)[7] of the MMWA should be construed liberally and has no limitations, the Court finds that privity must exist for the plaintiffs to receive a return of all monies paid toward the motorhome in exchange of the motorhome. The plaintiffs have cited to no authority whereby a Tennessee court allowed a plaintiff to seek such a remedy in the absence of privity of contract. Even though revocation of acceptance can be a breach of warranty remedy, this Court has found no case applying Tennessee warranty law allowing a plaintiff to seek such a remedy against a manufacturer with whom a plaintiff is not in privity of contract. If the revocation of acceptance is the remedy plaintiffs ultimately desired, then they needed to file suit against the seller, the party with whom they have privity of contract. See *Gilbert*, 352 F.Supp.2d at 1335.

In sum, because the warranty in issue is not a "full" warranty but a "limited" warranty and because there is no privity of contract between the Longs and Monaco, the Longs'

---

[7]15 U.S.C. §2310(d)(1) states that "a consumer who is damaged ... may bring a suit for damages and other equitable relief."

request for revocation of acceptance relief is not a remedy available to them under the MMWA.

### B. Economic Damages

The plaintiffs request money damages for breach of warranties. Several types of monetary damages are considered in the Court's analysis. Economic damages are defined as the decreased value of an end product caused by a defective component; however, economic damages would not include any damages to the end product caused by the defective component. *See McCrary v. Kelly Technical Coatings*, CCH P 10,666 1985 WL 75663, at *4 (Tenn.Ct.App. Aug. 28, 1985). Examples of economic damages include, but are not limited to, inadequate value, the cost of repair, or replacement of parts. *See Id.* at 4; *Walker v. Truck Contractors, Inc. v. Crane Carrier Co.*, 405 F.Supp, 911(E.D.Tenn. 1975). In order to recover economic damages, privity of contract between parties is required. *See* T.C.A. §29-34-104; *Walker*, 405 F.Supp at 916. As mentioned above, the parties are not in privity. Accordingly, plaintiffs may not recover any damages to be defined as economic loss damages for breach of implied warranties after expiration of the limited warranty.[8]

### C. Property Damage

---

[8]Plaintiffs still have their cause of action based on breach of express warranties and implied warranties as stated in the limited warranty.

Property damages include any damages to the end product caused by the defective component, or rather, physical harm to the user's property. *See McCrary,* 1985 WL 75663, at *4 (citations omitted). "In all causes of action for personal injury or property damage brought on account of negligence, strict liability, or breach of warranty, privity shall not be a requirement to maintain said action." *See* T.C.A. §29-34-104; *Wheeler v. John Deer Co.,* No. C.A. 90 1987 WL 18896, at *2 (Tenn.Ct.App. Oct. 27, 1987). In other words, the Tennessee General Assembly abolished the requirement of privity as to property damage in suits on breach of warranty. Accordingly, plaintiffs can recover for damages due to property damage.

However, Monaco asserts that it has disclaimed coverage for any and all incidental and consequential damages in the limited warranty. Under Tennessee law, a warrantor can disclaim consequential damages.[9] Constraints on such disclaimers solely relate to the unconscionableness of the warranty and do not depend on the potential that the warranty failed its essential purpose. T.C.A. §47-2-719(2); *Aquascene, Inc. v. Noritsu American Corp.*, 831 F.Supp. 602, 605 (M.D.Tenn. 1993); *Fifth Third Leasing Comp. v. Cherokee Pontiac, Buick, Olds, GMC Trucks, LLC*, No. E2001-01628-COA-R3-CV, 2002 WL 487224, at *2 (Tenn.Ct.App. March 13, 2002)("a consequential damage exclusion is enforceable, unless unconscionable, whether or not other remedies in the contract fail of their essential

---

[9]Pursuant to 15 U.S.C. §2304(a)(3), a warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty. *See also Najran Co. for General Contracting and Trading v. Fleetwood Enterprises, Inc.*, 659 F.Supp. 1081, 1100 (S.D.Ga 1986).

13

purpose under Tenn. Code Ann. § 47-2-719.").[10][11] Under Tennessee law, a consequential

damages exclusion is not unconscionable where bargaining between the parties is fair and

relatively equal; parties are sophisticated and intelligent; and the damages exclusion is not

unreasonable. See T.C.A. §47-2-719(3); *Aquascene,* 831 F.Supp. at 605. Whether the

warranty is unconscionable is a question of law. *Aquascene,* 831 F.Supp. at 605.


The Longs cite an Illinois Supreme Court case, *Razor v. Hyundai Motor America*,

No. 98813, 2006 WL 1765427 (Ill. June 29, 2006), for the proposition that Monaco's

disclaimer of consequential damages is unconscionable. In *Razor*, the Court found an

exclusion of consequential damages unconscionable when the exclusion was apparently

not disclosed. *Id.* at *14. The plaintiffs in *Razor* asserted that the warranty was really an

"after the fact" adhesive contract, i.e. there was a lack of pre-sale disclosure and a lack of

assent. *Id.* In contrast, the Longs state in their complaint and/or in deposition that they

were well aware of the written limited warranty before purchase and had discussed the

warranty with the sales agent. Further, the plaintiffs signed their names to contract

documents evincing that they had read the limited warranty. In light of the evidence in the

---

[10]As set forth in *Townes v. Sunbeam Oster Co. Inc.,* 50 S.W.3d 446, 452 (Tenn.Ct.App. 2001):

State law must be applied in diversity cases filed in federal court that do not involve a
federal question. The federal courts must look to the law of the state as declared by its
highest court when they decide questions of state law. In the absence of an authoritative
pronouncement by the state's highest court, the federal courts may either certify the state
law question to the state's highest court for an authoritative interpretation, or ascertain
and apply the state law as they understand it from the available sources.

(internal citations omitted).

[11]The federal court should heed the decisions of the intermediate appellate state courts except
where the federal court is persuaded that the highest court of the state would not so decide. *Comm'r v.
Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

14

record, the Court finds that the limited warranty is not unconscionable. Therefore, consequential damages are unavailable.

        D.      Implied Warranty of Merchantability, Fitness for a Particular Purpose, and Habitability

As mentioned above, claims for breach of implied warranty will fail in the absence of privity of contract except where the privity requirement has been specifically abolished. In other words, as to plaintiffs' implied warranty claims, the plaintiffs may only potentially recover those types of damages for which the privity requirement has been specifically abolished by statute. T.C.A. §29-34-104.

As discussed above, the Tennessee General Assembly has abolished the need for privity only in cases of personal injury and property damage. T.C.A. §29-34-104. Since the plaintiffs have made no claims for personal injury, they are only left to pursue claims for property damage. As previously stated, the Court holds that the defendant has successfully disclaimed property damages which are consequential damages. Accordingly, plaintiffs' claims in regard to breach of implied warranties occurring after expiration of the limited warranty are limited to property damages which are not consequential, to the extent any such damages may exist.[12]

        E.      Problems After the Expiration of the Limited Warranty

---

[12]In addition, plaintiffs still maintain their claim for damages based upon breach of implied warranties as expressed in the limited warranty.

The effective expiration date of the limited warranty was April 15, 2003. As to all claims for breach of express warranty for defects arising after this date, such claims are dismissed, to the extent consistent with this opinion.

F.      Claims Based on Parts Excluded from the Limited Warranty

The defendant asserts that many of the alleged defects in the motorhome, such as alleged defects pertaining to the engine, steering/suspension, brake system, leveling system, air conditioning, and entertainment system, are items and component parts to which coverage has been disclaimed under the limited warranty.

15 U.S.C.2302(b)(2) states that "[n]othing in the title (other than paragraph (3) of this subsection) shall be deemed to authorize the Commission to prescribe the duration of written warranties given or to require that a consumer product or any of its components be warranted." Further, 16 C.F.R. §700.4 states that a "supplier who does no more than distribute or sell a consumer product covered by a written warranty offered by another person or business and which identifies that person or business as the warrantor is not liable for failure of the written warranty to comply with the Act or rules thereunder. However, other actions and written and oral representations of such a supplier in connection with the offer or sale of a warranted product obligate that supplier under the

16

Act."[13]

The disclaimer language relating to items not covered by the limited warranty is clear: "Warrantor's Limited Warranty covers defects in the manufacture of your motorhome and defects in material used to manufacture your motorhome. *Also see the section 'What the Warranty Does Not Cover' set out below.*" (emphasis added). In a similar case, *Bailey v. Monaco Coach Corp.*, 350 F.Supp.2d 1036, 1041 (N.D.Ga. 2004), the Court noted that the rules of contract construction require courts to read provisions of a contract harmoniously in order to give effect to all portions and that one section of the contract may be resorted to for the explanation of the meaning of the language of another section. Moreover, the *Bailey* Court found that the label of "Safari Motorhome Limited Warranty" and the "second sentence of the section describing coverage by the warranty, ...[which] explicitly directs the consumer to look to the section titled 'What the Warranty Does Not Cover' ... clarifies the scope of warranty coverage by setting forth an extensive list of items and problems that are excluded from coverage." *Id.* The Court finds that, as in *Bailey*, the defendant unambiguously disclaimed coverage of certain items deemed component parts or otherwise. The Court grants the defendant's motion for denial of damages for breach

---

[13]Plaintiffs have alleged that the exclusion of damages section does not apply because the warranty's disclaimer was ineffective because it failed to comply with the disclaimer requirements set forth in 16 C.F.R.§701.3. In particular, the plaintiffs argue that the warranty does not contain a clear description of the products that were excluded from the warranty. Further, the warranty does not include a list of all independent warrantors. The Court finds the reasoning in *Bailey v. Monaco Coach Corporation*, 350 F.Supp.2d 1036 (N.D.Ga. 2004) to be sound. As the *Bailey* Court stated, it is sufficient that defendant's limited warranty defines the categories of items excluded under the warranty. *Id.* at 1041-42. Requiring a warrantor to set forth an exhaustive list, from bumper to bumper, of every included and excluded item would prove unduly burdensome and unnecessary for a clear description of the scope of warranty coverage. *Id.* Additionally, as to listing information of warrantors of excluded parts, the warranty gives an explanation on how to utilize its warranty, and there is not a requirement that information pertaining to warrantors of excluded parts also be included. *Id.* at 1042.

of express warranty based on parts excluded from the limited warranty, to the extent consistent with this opinion.

G.     Defects that Were Successfully Repaired

The defendant has not asserted or debated a list of "successful repairs;" rather, the defendant states that it anticipates that this Court will rule as a matter of law on the subject of successful repairs and that the details of specific repairs will be addressed fully in a subsequent motion in limine.

The Court holds that claims based upon defects that have been successfully repaired and/or accepted by the plaintiffs are dismissed as a matter of law and to the extent consistent with this opinion.  The Court does not determine at this time which defects, if any, have been successfully repaired and/or accepted by the plaintiffs.   As to the details of specific repairs, if the defendant is so inclined, the Court will entertain any motions in limine concerning any repairs deemed to be successfully repaired by the defendant and/or accepted by the plaintiffs.  Alternatively, the matter may be proper for jury determination.

H.     Punitive Damages

Although the MMWA does not contemplate the award of punitive damages, *Walsh v. Ford Motor Co.*, 627 F.Supp. 1519 (D.D.C. 1986), punitive damages are recoverable under the Act for breach of warranty only if they may be recovered in a breach of warranty

18

action brought under the governing state law. *Simmons v. Taylor Childre Chevrolet-Pontiac*, 629 F.Supp. 1030 (M.D.Ga. 1986). Further, although in respect to §2310 of the Act, the broad language of the chapter falls short of express authorization for an award of punitive damages, it cannot be said that punitive damages are never recoverable under federal law unless expressly authorized. *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106 (7th Cir. 1979) *certiorari denied* 100 S.Ct. 146, 444 U.S. 870, 62 L.Ed.2d 95. It is not unlikely that Congress intended to provide at least the same relief available under state law for breach of warranty. *Id.*

The defendant argues that the only instance where punitive damages may be awarded is where an intentional breach of contract is coupled with malice or recklessness. *Stewart Title co. v. First Am. Title Ins. Co.*, 44 F.Supp.2d 942, 964 (W.D. Tenn 1999). In the instant matter and viewing the facts favorably for the plaintiffs, the motorhome was out of service for a total of 5 months (excluding 60 days awaiting repairs) in the first year of use (the warranty period itself only lasted 12 months); the motorhome required nine separate service dates for repairs; and the majority of the defects have not been successfully repaired. The Court is persuaded that a jury could find that Monaco's conduct and actions were punitive in nature. Generally, "[i]t is established law that an award of punitive damages lies within the discretion of the trier of facts." *Whittington v. Grand Valley Lakes, Inc.,* 547 S.W.2d 241,243 (Tenn.1977)*.*

The Court cannot rule, as a matter of law, that the plaintiffs are foreclosed from raising the issue of punitive damages at trial. The allegations in the complaint, taken in the

19

light most favorable to the plaintiffs, could support a claim for punitive damages.

### IV.  Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, requires the court to construe the complaint in the light most favorable to a plaintiff, accept all the complaint's factual allegations as true, and determine whether a plaintiff undoubtedly can prove no set of facts in support of its claims that would entitle it to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6thCir. 1990) *cert. denied,* 498 U.S. 867 (1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6thCir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6thCir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

### V.  Motions to Dismiss and Applicable Law

  A.  Section 47-18-1402 of the Tennessee Consumer Protection Act

20

Section 47-18-1402 of the TCPA relates to consumer protection warranty extensions and states in relevant part as follows:

> Any written warranty or service contract purchased in this state on or after July 1, 1989, and in effect when there is a failure of the product under such written warranty or service contract shall be extended as follows: (1) the number of days the consumer is deprived of the use of the product by reason of the product being in repair; plus (2) [t]wo (2) additional working days.

However, T.C.A. §47-18-1404 places a restriction on extending the warranty stating that §47-18-1402 shall not apply to a written warranty or a service contract for a new or used motor vehicle.

The TCPA does not appear to define the term "motor vehicle." The defendant asserts that the definition of motor vehicle should be construed by T.C.A. § 55-1-103(3), which designates a motor vehicle as "every vehicle that is self-propelled ...." The same section defines vehicle as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." T.C.A. § 55-1-103(5). Defendant cites *General Accident Ins. Co. v. Casteel*, CA. NO. 72 1990 WL 927 (Tenn.Ct.App. Jan. 1, 1990) to support its interpretation of the term "motor vehicle." In *Casteel*, the issue before the Court was whether the functioning of an auxiliary gasoline motor in a motorhome for the purpose of generating electricity to power the light and air conditioning fell within the exclusion of a homeowner's insurance policy, which excludes liability coverage for bodily injury arising out of the use of a motor vehicle operated by an insured. *Id.* at 2. The Court construed the motorhome to be a "motor vehicle" when interpreting the insurance contract

21

clause.  *Id.* at 1-3.

For the purposes of this motion, the plaintiffs have asked the Court to adopt the definition of motor vehicle as defined under T.C.A. §55-24-201(3)(A), which qualifies §55-1-103.  Under T.C.A. §55-24-201(3)(A), the definition of motor vehicle excludes motor homes. Although the plaintiffs have put forth arguments of legal logic for the proposition that the term "motor vehicle" under the TCPA would exclude the subject motorhome,  the plaintiffs have not cited any authority to support the proffered interpretation.

The Court defines motor vehicle by yet another section of the Tennessee Code. In *Coleman v. Pryor Oldsmobile*, No. 38887-7 T.D. 1996 WL 544440 (Tenn.Ct.App. Sept. 25, 1996), the plaintiffs asserted that the defendant violated the TCPA by not informing them that the new demonstrator car sold to them had received damage to the exterior paint and had been repainted.  In its analysis of the alleged TCPA violation, the *Coleman* Court used the definition of "new passenger car" as defined under T.C.A. §55-5-106(e)(5).  *Id.* at 1.  The Court stated that "[t]his definition is applicable under the Consumer Protection Act." *Id.*  Indeed, under  §47-18-119 of the TCPA, the Tennessee Code states that for the purposes of §47-18-104(b)(6), any passenger motor vehicle which meets the requirements of the definition for a new passenger car in §55-5-106(e)(5) shall be construed to be new. It appears to this Court that the Tennessee legislature shows a preference for defining vehicle types under T.C.A. §55-5-106 when construing portions of the TCPA.

Thus, in the instant case, the Court finds that T.C.A. §55-5-106(e)(4), which supplies

22

a definition of motor vehicle, applies to provisions of the TCPA. T.C.A. §55-5-106(e)(4) states that a motor vehicle is any vehicle which is self-propelled and designed to be used on public highways. The section does not articulate an exclusion for motorhomes. Additionally, pursuant to T.C.A. §55-1-104(2), a "'[m]otor home' means every *motor vehicle* which is designed, constructed (either originally by the manufacturer or rebuilt by another) and equipped as a dwelling place, living abode or sleeping place." (emphasis added). In summation and in light of the above, the Court finds that T.C.A. §47-18-1402 does not apply to the instant action. Accordingly, the Court holds that there is no extension of warranty on account of repair time.

### B.    Defendant's Counterclaim

Initially, the plaintiffs assert that the defendant has not followed proper procedure in pursuing remedies under T.C.A. §47-18-109(e). Specifically, the Longs argue that if the defendant demands its costs and expenses for defending an allegedly baseless claim of the plaintiffs, the averments should be in the form of a motion for sanctions, rather than a counterclaim. Although the plaintiffs state that "[n]owhere does the statute itself say a defendant may institute any distinct cause of action or counter-complaint for violation [under T.C.A. §47-18-109(e)]" and that they are "unable to locate a single authority in Tennessee that has stated an implied a cause of action under T.C.A.§47-18-109(e)," the plaintiffs are unable to cite any authority in which a Tennessee court has dismissed such a counterclaim. This Court is likewise unable to find such authority. However, as defendant has shown, Tennessee courts have entertained such counterclaims as a part

23

of the entire case without dismissing the counterclaim *sua sponte*. *See Glanton v. Bob Parks Realty*, M2003-01144-COA-R3-CV 2005 WL 1021559, *3 (Tenn.Ct.App. Apr. 27,2005); *Don Smith Ford, Lincoln-Mercury, Inc. v. Bolinger*, E2003-02764-COA-R3-CV, 2005 WL 711963 (Tenn.Ct.App. Mar. 29, 2005);*J.C.Bradford & Co. v. Southern Realty Partners*, No. 02A01-9801-CH-00006 WL 855465 (Tenn.Ct.App. Dec. 10, 1998). Accordingly, the Court declines to dismiss the counterclaim upon procedural considerations.

As to considering plaintiffs' motion to dismiss defendant's counterclaim upon the merits, at this juncture in the proceedings, the Court does not have enough information to dismiss the counterclaim. This is a matter more appropriate for consideration at trial.

## VI.     CONCLUSION

For the reasons hereinabove set forth, defendant's motion for partial summary judgement [Doc. 72] is **DENIED in part** and **GRANTED in part**. In particular, defendant's motion to deny the plaintiffs' demand for revocation of acceptance relief is **GRANTED**; defendant's motion for denial of economic damages for breach of implied warranties is **GRANTED as set forth specifically above**; defendant's motion for denial of property damages that are consequential damages is **GRANTED to the extent as set forth specifically above**; defendant's motion to deny damages due to implied warranties is **GRANTED to the extent set forth specifically above**; defendant's motion for denial of

damages due to alleged defects arising after the expiration of the limited warranty is **GRANTED as set forth specifically above**; defendant's motion for denial of damages based on parts excluded from the limited warranty is **GRANTED as set forth specifically above**; defendant's motion for denial of damages due to alleged defects that were successfully repaired and accepted by the plaintiffs is **GRANTED as set forth specifically above**; and defendant's motion for denial of punitive damages is **DENIED**.  Additionally, defendant's motion to dismiss [Doc.91] is **GRANTED**, and plaintiffs' motion to dismiss defendant's counterclaim [Doc. 96] is **DENIED**.  The parties will prepare the case for trial.

**IT IS SO ORDERED.**

**ENTER:**

s/Thomas W. Phillips_____
UNITED STATES DISTRICT JUDGE