UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RANDOLPH AND GLORIA LONG,    )
                              )
        Plaintiffs,           )
                              )
v.                            )      No. 3:04-CV-203
                              )      (PHILLIPS/SHIRLEY)
MONACO COACH CORPORATION,     )
                              )
        Defendant.            )

## MEMORANDUM AND OPINION

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Orders [Doc. 118, 129] of the Honorable Thomas W. Phillips, United States District Judge, for disposition of the following motions: Defendant's Objection to Plaintiffs' Amended Expert Witness Disclosure [Doc. 128], Defendant Monaco Coach's Motion to Exclude Expert Testimony of William Trimmell [Doc. 113], and Defendant Monaco Coach's Motion to Exclude Expert Testimony of Dale Anderson [Doc. 115]. These matters were heard at oral argument, before the undersigned, on January 10, 2007.

**I.    BACKGROUND**

This case[1] involves the sale of a recreational vehicle ("motor coach"). Plaintiffs allege they purchased a motor coach, manufactured by Monaco Coach, that was defective and failed

---
[1]See Docs. 1, 2.

to conform to warranties issued to Plaintiffs in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* At this stage in the proceedings, a key issue is the diminished value associated with those alleged defects.

On October 26, 2006, Defendant filed a Motion to Exclude Expert Testimony of William Trimmell [Doc. 113] and a Motion to Exclude Expert Testimony of Dale Anderson [Doc. 115], along with accompanying memoranda in support of these motions [Docs. 114, 116]. Plaintiffs responded [Docs. 125, 126] to Defendant's motions on December 21, 2006.

On December 29, 2006, Plaintiffs filed an Amended Expert Witness Disclosure [Doc. 127]. The amended document included a revised evaluation report, containing a new figure, "estimated value at time of sale." Defendant filed an objection [Doc. 129] to said disclosure on January 4, 2007.

## II. OBJECTION TO PLAINTIFFS' AMENDED EXPERT WITNESS DISCLOSURE

Defendant, in its objection [Doc. 129], argues that the amendment includes valuation testimony and a purported physical inspection of the motor coach at issue which were not a part of previous disclosures. Defendant claims allowing these amendments result in prejudice to the defendant because the defendant would have addressed those issues in its Motion to Exclude the Expert Testimony of William Trimmell [Doc. 113]. Defendant also noted that the amended disclosure was filed on December 29, 2006, and the discovery cut-off was January 1, 2007, giving the defendant scant opportunity to depose the expert on this new information. Therefore, the defendant objected to the new disclosures and moved the Court to exclude any testimony related to the untimely amendment. Plaintiffs did not file a response to Defendant's objection.

2

At oral argument, Defendant argued consistent with its filed objection [Doc. 129]. Plaintiffs counsel informed the court that no physical inspection had ever actually occurred, so any mention to that effect was merely a "typographical error" in the amended expert disclosure. Thus, the only issue left to be decided was whether the new valuation testimony should be excluded.

The Court, noting the potential prejudicial effect to Defendant, granted Defendant the opportunity to postpone the <u>Daubert</u> hearing, which was scheduled for the same day and depose Plaintiffs' expert regarding the new valuation figure, or to proceed to the <u>Daubert</u> hearing and address the new valuation figure at that time. Defendant cited his preference for the latter course. Finding that no prejudicial effect will inure to Defendant through addressing these issues at the <u>Daubert</u> hearing, Defendant's Objection to Plaintiffs' Amended Expert Witness Disclosure [Doc. 128] is **DENIED**.

## III. MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM TRIMMELL

Defendant moves to exclude the expert testimony of William Trimmell [Doc. 113] pursuant to Federal Rules of Evidence 104 and 702. In its accompanying memorandum [Doc. 114], which includes minimal portions of the relevant transcript, Defendant notes William Trimmell ("Trimmell") was called as an expert regarding the general and salvage values of motor homes. Trimmell previously owned and operated motor coach repair shops, has owned numerous motor homes himself, and currently works as a consultant. Although he is not employed by an insurance company *per se*, he has done consulting work on motor home claims and instructs insurance companies on motorcoach issues. He never physically inspected the motor coach at issue, but talked with the plaintiffs, looked at pictures, and evaluated service records to determine the motor coach's

3

value. Based on these facts, the defendant moved to exclude Trimmell's valuation testimony. [Doc. 113].

Plaintiffs responded [Doc. 126] by asserting that Trimmell is qualified to be an expert, noting his vast experience in the motor coach appraisal industry. Plaintiffs argued Trimmell's valuation testimony was not based on any scientific method, specialized theory, or technique but his vast experience appraising automobiles. Accordingly, his valuation testimony should not be excluded.

At the hearing, the parties argued consistent with their pleadings. Trimmell testified to his vast expertise in the motor coach appraisal and repair industries. He testified that he never physically inspected the actual motor coach at issue, but rather reviewed pictures and service reports provided by Plaintiffs. Furthermore, he asserted that physical inspections are not the standard industry practice, but that appraisals are reliable even when they are created solely through telephone consultations and viewing photographs.

The crux of Trimmell's testimony, and the pleadings at issue, was Trimmell's evaluation report [Ex. 2 at the hearing]. Trimmell's report lists numerous valuation figures:

> N.A.D.A. Stated MSRP Was = $229,880.00
> Whole Sale Value Is = $127,950.00
> Retail Value Is = $168,720.00
> Client Paid Is = $223,600.00
> Top Book Retail Value Is = $169,970.00
> Salvage Value is $33,994.00 at 20 Per-Cent [sic]
> Estimated Value at Time of Sale = $130,000.00
> $169,970 = Full ACV [Actual Cash Value] with No Problems
> $84,360.00 = Full ACV with Known Problems
> $85,610.00 = Estimated Loss of Value to a Wholsaler [sic]

4

[Ex. 2]. Trimmell was asked to describe his methodology utilized to reach the figures. He testified that several of the figures were reached through consulting industry standard guides, such as NADA[2] guides, researching comparable sales, and consulting the purchase order for the motor coach at issue. According to his testimony, Trimmell employed the above methodology in reaching the following figures, as found in his initial report, dated June 16, 2004:

> N.A.D.A. Stated MSRP Was = $229,880.00
> Whole Sale Value Is = $127,950.00
> Retail Value Is = $168, 720.00
> Client Paid Is = $223,600.00
> Top Book Retail Value Is = $169,970.00
> $169,970 = Full ACV with No Problems

Trimmell would be allowed to testify as to these figures. When asked to explain his methodology in reaching the remaining figures, Trimmell had considerable difficulty. After repeated questioning from Plaintiffs' counsel, Defendant's counsel, and the Court, Trimmell admitted that he has no set formula and the figures represented the number he ascertained from estimating what a wholesaler would pay for the subject motor coach. Trimmell neither testified to utilizing a method or calculation capable of review, nor did he begin his calculations with an industry standard figure and then deduct itemized amounts commensurate with the repairs needed. Instead, Trimmell's valuation was an unsubstantiated, personal opinion as to what a wholesaler might pay for the motor coach at issue.

Preliminary questions regarding an expert's qualifications are within the purview of the Court and must be established by a preponderance of the evidence. Fed. R. Evid. 104(a);

---

[2] Nada, a company which produces both consumer and trade materials, is "the recognized authority by industry professionals for new and used vehicle pricing." Nada, http://www.nada.com (last visited Jan. 11, 2007).

Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 (1993). Rule 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts of date, (2) *the testimony is the product of reliable principles and methods*, *and* (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added). The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. See also Pizel v. Monaco Coach Corp., 374 F. Supp. 2d 653, 655 (N.D. Ind. 2005) (holding that courts must determine "[w]hether the methodology underlying the expert's conclusion is reliable")[3]. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Daubert, 509 U.S. at 590. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1318 (9th Cir. 1995). Accordingly, "[o]ffering only a bottom line conclusion does not assist

---

[3]Plaintiffs extensively cited to and relied on this case. Additionally, the case involved this same expert.

the trier of fact and should not be admitted." Pizel, 374 F. Supp. 2d at 655 (citing to Zenith Elecs. Corp. V. WH-TV Broad. Corp., 395 F.3d 416, 420 (7th Cir. 2005)); Smith v. Freightliner, LLC, 2006 WL 3299753, at *3 (D. N.J. Nov. 13, 2006) (publication pending) (holding that when an expert's opinion is not based on discernable methodology, the opinion must be excluded).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably measure reliability in a given case. Id. at 153.

In this case, the Court notes that Trimmell is undoubtedly very experienced in the fields of motor coach repair and appraisal. As to the lack of a physical inspection, the Courts finds it is of no great import, as reliable appraisals may be rendered solely based upon pictures and a vehicle's service records. See Pizel, 374 F. Supp. 2d at 657 (holding that while a valuation is more precise when a physical inspection occurs, the lack of a physical inspection does not render the opinion unreliable). Accordingly, the lack of physical inspection goes more to the weight to be given to his opinion rather this his right to express this opinion.

Trimmell's valuation testimony, however, is more troubling. Trimmell never testified to his method of divining the motor coach's value. Instead, he repeatedly asserted that his opinion

7

was based solely on what he believed a wholesaler might be willing to pay for the motor coach. An excerpt of the hearing illustrates the issues this Court confronts when evaluating Trimmell's expert qualifications. The following excerpt is of Trimmell explaining his valuation methodology and is representative of the whole:

> The Court: I also know how you got the last number, 85,610.
> Mr. Trimmell: Yes, sir.
> The Court: You got that by subtracting the 84,360 from the 169.
> Mr. Trimmell: I did, sir.
> The Court: What I haven't figured out is how you the 84,360.
> . . . . .
> The Court: What I am trying to figure out is how you got a very specific number, 84,360, as opposed to --
> Mr. Trimmell: 84,500.
> The Court: Or 85.
> Mr. Trimmell: It's a ball park figure, sir. It's not --
> The Court: How did you choose that number, as opposed to 84,500, a round number.
> Mr. Trimmell: That is what I put down there. I never use – an appraiser very rarely uses round numbers because then it doesn't look like you are doing your job.
> The Court: Did you come up with 84,500 and say I am going to put 84,360?
> Mr. Trimmell: No, I probably calculated in my head the 84,360. That sounds like a good number as versus saying rounding it off to 84,400.
> The Court: Why?
> Mr. Trimmell: It's the way I do my appraisals, sir.

As to whether he ever utilized a set formula, Trimmell responded:

> The Court: How did you get 84,360?
> Mr. Trimmell: That is the number that I came up with. There is no formula. That is what I am trying to get through to everybody. There is no set formula.

Lacking any indicia of methodology or calculations, this Court finds that his figures are "bottom line conclusion[s]." Pizel, 374 F. Supp. 2d at 655. As such, they do not qualify as expert testimony and are inadmissible. Id. Accordingly, this Court **GRANTS** Defendant's Motion [Doc. 113] to the

8

extent Trimmell is testifying to his own valuation opinions, and not industry standard guides. Thus, the following figures from Trimmell's evaluation report [Ex. 2] would be excluded:

> Salvage Value is $33,994.00 at 20 Per-Cent [sic]
> Estimated Value at Time of Sale = $130,000.00
> $84,360.00 = Full ACV with Known Problems
> $85,610.00 = Estimated Loss of Value to a Wholsaler [sic].

Trimmell failed to state any reasonable or reliable basis for the figure listed as "salvage value." As to the "estimated value at time of sale" and the "estimated loss of value to a wholesaler," Trimmell gave no basis for how he reached these values or which figure is appropriate in varied circumstances. As to the "Full ACV with Known Problems," Trimmell never stated a reasonable or reliable basis for that figure. Moreover, the undersigned would like to note the figure, $84,360.00, is exactly fifty percent of the retail value assigned to the motor coach. At the hearing, Trimmell testified that using a flat percentage would be an improper valuation method, but it appears that said method was employed to reach the instant figure. Accordingly, the four values listed directly above should be excluded.

### IV.     MOTION TO EXCLUDE EXPERT TESTIMONY OF DALE ANDERSON

Defendant moves to exclude the expert testimony of Dale Anderson [Doc. 115] pursuant to Federal Rules of Evidence 104 and 702 [Doc. 114]. In its accompanying memorandum [Doc. 116], which includes minimal portions of the relevant transcript, Defendant notes Dale Anderson ("Anderson") was called as an expert at valuing motor coachs generally and determining their worth when salvaged. Although Anderson's employment involves inspecting and recognizing defects, he has not received formal training in the appraisal of motor coachs, and he has never worked in the motor coach appraisal industry. He inspected the motor coach at issue, the client

9

purchase agreement, previous repair records, and prepared a service list based upon his inspection. Based on these facts, the defendant moved to exclude Anderson's testimony. [Doc. 115].

Defendant argues Anderson's testimony should be excluded because Anderson does not have specialized knowledge regarding valuation. In the portions of the transcript submitted, Anderson states that his valuation testimony was based on keying numbers into a website - www.nada.com,[4] and not any sort of specialized personal knowledge. Anderson's final valuation that he set forth was 20% of the value listed on the NADA website. He failed to set forth any facts or analysis which would support an 80% reduction in the motor coach's value. Thus, Defendant argues Anderson's findings were not based on facts set forth, but were based on unreliable, unsupported, "bottom-line" figures.

Plaintiffs responded [Doc. 125] to Defendant's motion [Doc. 115] on December 21, 2006. Plaintiffs argued Anderson's testimony was relevant and admissible. They stated that his valuation testimony was based on what he were to pay for the coach in question if he were to purchasing it himself. Plaintiffs cited to case law noting that the judge is not tied to the traditional Daubert factors when analyzing non-scientific testimony.

At the hearing, parties argued consistent with their briefs. However, while under oath, Anderson testified repeatedly that he was not an expert in the field of valuation and his own testimony and inability to articulate a reasonable, reliable expert basis for his figures proved the same to be true.

---

[4]This website provides valuation information on recreational vehicles. Nada, http://www.nada.com (last visited Jan. 11, 2007).

Subsequently, Plaintiffs, at the conclusion of the hearing, orally withdrew their opposition to Defendant's Motion to Exclude Expert Testimony of Dale Anderson [Doc. 115]. Accordingly, by consent of the parties, this Court **GRANT** Defendant's Motion to Exclude [Doc. 115]. The Court notes that Defendant's Motion [Doc. 115] sought only to exclude Anderson's valuation and appraisal testimony, not Anderson's testimony in its entirety, and his exclusion is therefore limited to his valuation and appraisal tesitmony.

## IV. CONCLUSION

Accordingly, it is ordered that:

(1) Defendant Monaco Coach's Objection to Plaintiffs' Amended Expert Witness Disclosure [Doc. 128] is **DENIED**;

(2) Defendant Monaco Coach's Motion to Exclude Expert Testimony of William Trimmell [Doc. 113] is **GRANTED in part**, as more fully detailed above; and

(3) Defendant Monaco Coach's Motion to Exclude Expert Testimony of Dale Anderson [Doc. 115] is **GRANTED** as more fully detailed above.

**IT IS SO ORDERED.**

ENTER:

　　s/ C. Clifford Shirley, Jr.　
United States Magistrate Judge